UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY JEFFERSON,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-563-DRL-JEM

STIDAMN *et al.*,

    Defendants.

## OPINION AND ORDER

Anthony Jefferson, a prisoner without a lawyer, filed a complaint. ECF 1. "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Jefferson is proceeding without counsel, his allegations must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mr. Jefferson—who filed this lawsuit when he was incarcerated at the Hill Correctional Center in Galesburg, Illinois but has since been released—complains of events that happened at the Indiana State Prison. Specifically, he alleges he was involved in a "brief physical altercation" with another prisoner on January 10, 2021. ECF 1 at 2. An officer happened to be nearby, and "using her pepper spray, quickly stopped the incident from escalating by spraying said prisoner and this Plaintiff." *Id*. According to protocol, she pushed the emergency button on her radio, and several other officers immediately responded. By the time they got there, Mr. Jefferson was on one knee near his bed, "trying to get his breath after inhaling the pepper spray, which had also blinded the Plaintiff." *Id*.

Correctional Officer Stidamn arrived first and immediately ordered Mr. Jefferson to cuff up. Mr. Jefferson informed Officer Stidamn he was having trouble breathing. Officer Stidamn "then grabbed this Plaintiff's right arm, yelling "get-up!", began twisting it behind the Plaintiff's back, while attempting to put the handcuffs on him." *Id*. at 3. Because he was 52 years old, weighs more than 350 pounds, and is 6 feet 8 inches tall, Mr. Jefferson advised Officer Stidamn that one pair of normal-sized handcuffs would not fit around his writs unless "forced on, at which point such force would be obvious and injury is caused to the skin." *Id*. Officer Stidamn ignored Mr. Jefferson, insisted that the handcuffs were going on no matter what, jerked his arm back, and forced the cuff closed onto Mr. Jefferson's right wrist "which tore the skin, causing the Plaintiff to cry out in pain." *Id*. Correctional Officer Anderson and Correctional Officer Collins arrived as Officer Stidamn was forcing the handcuffs on. They assisted Officer Stidamn by grabbing

Mr. Jefferson, forcing him to bend over further, grabbing his left arm, twisting it behind his back, and forcing the other cuff closed. During the entire incident, Mr. Jefferson was crying out in pain. Mr. Jefferson alleges the use of force "caused a spontaneous RUPTURE of the Plaintiff's flexor tendons in his right arm . . . which required surgery to reconnect the ruptured tendons back onto the bicep." *Id*. (capitalization in original).

After the handcuffs were secured, the three officers jerked Mr. Jefferson "up off the floor by yanking the handcuffs and his arms upward" which caused him further pain. *Id*. Officer Anderson and Officer Collins then dragged him through the unit, down a staircase, and into a transport vehicle where they "pushed [him] inside a seatless van—on his knees—as his face was forced against a window for leverage." *Id*. at 4. He sustained injuries on his knees "due to the van's floor being dirty with rocks, rock salt, gravel, etc." *Id*. He was transported to a different unit to be examined by a nurse. Once they arrived, Officer Collins and Officer Anderson ordered him to get out of the van, but Mr. Jefferson advised them he could not comply because of his injury, his weight, and the position he was in. They became "extremely angry," grabbed Mr. Jefferson by the handcuffs, yanked him backwards, and dragged him out of the van and into the medical unit, which caused him further injuries and pain. Mr. Jefferson has sued Officers Stidamn, Anderson, and Collins for monetary damages.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline,

3

but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890.

Here, Mr. Jefferson alleges the officers used force that caused him serious injuries despite the fact that he was subdued and compliant (to the best of his abilities) during the entire incident. He alleges the officers ignored his explanations and repeated cries of pain. Although further investigation may reveal the force used was legitimate under the circumstances, at this preliminary stage—and giving Mr. Jefferson the benefit of the

4

inference to which he is entitled—he has stated plausible Eighth Amendment excessive force claims against each of the officers.

Mr. Jefferson also complains about the medical care he received following the incident. He alleges that when he arrived at the medical unit, a nurse washed out his eyes, proceeded to cleanse his knee and wrist wounds, secured his right arm in a sling, and provided him with Tylenol. She also told him she was ordering x-rays. Three days later, x-rays were taken. Because Mr. Jefferson was still experiencing pain and a lack of mobility in his arm, he submitted several sick call requests and was subsequently seen by Diane Thews, a physician. Dr. Thews ordered a second set of x-rays, which she reviewed on February 24, 2021, and she subsequently ordered an MRI. The results of the MRI, which were received on March 17, 2021, showed a "complete rupture of his flexor tendons in his right arm." ECF 1 at 5. He was then seen by an outside orthopedic surgeon, who recommended ibuprofen 800mg and Flexeril 10 mg for pain,[1] "surgery distal biceps repair with allograft," and a follow-up in four weeks. *Id*. Mr. Jefferson received the recommended surgery in mid-June of 2021. He has sued Dr. Thews and unnamed John/Jane Doe physicians for monetary damages for allegedly delaying his treatment and only prescribing Tylenol for his pain prior to the visit with the orthopedic surgeon.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940

---

[1] Prior to that time, he had only been prescribed Tylenol.

F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court will "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and quotations omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness," *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotations omitted).

      Here, Mr. Jefferson hasn't stated a plausible claim against either Dr. Thews or the John/Jane Doe physicians. To begin, other than a conclusory reference to the Does near the end of his complaint, he doesn't provide any details about his interactions with them or how they were involved in his care. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)

("Only persons who cause or participate in the violations are responsible."). As to Dr. Thews, Mr. Jefferson takes issue with the fact that his surgery wasn't scheduled for approximately five months[2] and that she only gave him Tylenol for pain relief until she received the recommendation from the orthopedic surgeon for ibuprofen and Flexeril. With regard to the timeframe, he doesn't provide details about his interactions with Dr. Thews, and the complaint leaves out information about the timing of certain events (i.e., when he was first seen by her and when he first saw the orthopedic surgeon). From what he does allege, it isn't plausible to infer he failed to receive constitutionally adequate medical care for his injury. Mr. Jefferson admits he was assessed and treated by a nurse the same night he was injured. After he submitted several sick call requests, he was seen by Dr. Thews who ordered a second x-ray, a follow-up MRI, a consultation with an orthopedic surgeon, and the surgery that was ultimately recommended. Though Mr. Jefferson may not have agreed with the multiple steps she took to diagnose and treat his injury, the facts alleged don't plausibly suggest she was deliberately indifferent to his needs. *See e.g.*, *Walker*, 940 F.3d at 965 (court must defer to physician's decisions unless "no minimally competent professional" would have done the same); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (neither incompetence nor even medical malpractice constitutes deliberate indifference). As to pain relief, the complaint is short on facts, dates, and specifics about who he asked for additional medication and when or why he sought it. He admits he was receiving Tylenol and suggests that he was prescribed additional

---

[2] Mr. Jefferson indicates it was six months, but his injury occurred on January 10, 2021, and his surgery occurred in mid-June of that same year.

medication once the orthopedic surgeon recommended it.³ Without more, these allegations don't plausibly constitute deliberate indifference by Dr. Thews either. *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.").

For these reasons, the court:

(1) GRANTS Anthony Jefferson leave to proceed against Correctional Officer Stidamn, Correctional Officer Collins, and Correctional Officer Anderson in their individual capacities for monetary damages for subjecting him to excessive force on January 10, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Diane Thews, Physician, and John/Jane Doe(s);

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Correctional Officer Stidamn, Correctional Officer Collins, and Correctional Officer Anderson at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

---

³ He alleges Dr. Thews would not prescribe him medication stronger than Tylenol "*until* the orthopedic surgeon" recommended it. ECF 1 at 5–6 (emphasis added).

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Correctional Officer Stidamn, Correctional Officer Collins, and Correctional Officer Anderson to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

April 19, 2024　　　　　　　　　　　　　　　*s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　　　Judge, United States District Court